**Pauline KOZIARA, Plaintiff,**

v.

**CITY OF CASSELBERRY, Defendant.**

**No. 6:02CV828–ORL–31–KRS.**

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 3, 2003.

R. Steven Ruta, Victor L. Chapman, Barrett, Chapman & Ruta, P.A., Steven

Gerald Mason, Law Office of Steven G. Mason, Orlando, FL, for Plaintiffs.

Usher L. Brown, Anthony A. Garganese, Brown, Ward, Salzman & Weiss, P.A., Orlando, FL, for Defendant.

## ORDER

PRESNELL, District Judge.

This case is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 45), Defendant's Motion for Summary Judgment (Doc. 46), Plaintiff's response (Doc. 48), and Defendant's response (Doc. 49). The Court held a hearing on November 17, 2003. Upon careful consideration of the applicable law, the Court DENIES Plaintiff's Motion for Summary Judgment (Doc. 45); GRANTS Defendant's Motion for Summary Judgment (Doc. 46); and DISMISSES this case for lack of a subject-matter jurisdiction.

## I. Background

On January 31, 2001, Defendant, City of Casselberry, Florida ("City") revoked an adult entertainment license it issued to Seminole Entertainment, Inc., ("Rachel's"). Before then, Rachel's operated as an erotic dance club in the City, and Plaintiff, Pauline Koziara ("Koziara"), performed there as an erotic dancer. While Rachel's license was revoked, Koziara could not perform at Rachel's. She did, however, continue to perform elsewhere, and she does not allege that she suffered any economic loss. Furthermore, Rachel's has recently obtained another adult entertainment license, and Koziara again performs there.

Soon after the City revoked Rachel's adult entertainment license, Rachel's pursued state-court judicial review of the City's decision to revoke the license.[1] La-

ter, on July 22, 2002, Rachel's and Koziara jointly filed the instant case. On account of the earlier proceedings, the Court entered summary judgment against Rachel's, finding that its claims were barred by the doctrine of *res judicata*. (Doc. 34). Koziara's claims remain pending in this Court.

In the instant case, Koziara challenges certain provisions of the City's Adult Entertainment Code ("City Code") as allegedly violative of the First, Fifth, and Fourteenth Amendments to the United States Constitution. Specifically, Koziara argues that:

A. [City Code Sections 14–92 and 14–93, which relate to suspension and revocation of adult entertainment licenses based on certain unlawful conduct,] violate due process and constitute an unconstitutional prior restraint (unchecked discretion) in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution.

B. Sections 14–92 and 14–93 do not further a substantial government interest and do not constitute the least-restrictive means to further the City's interest, in violation of the First and Fourteenth Amendments to the United States Constitution. Further, [those Sections] and the revocation of Rachel's adult entertainment license constitutes an unconstitutional prior restraint because same prohibits [sic] the presentation of entertainment that is protected by the First and Fourteenth Amendments to the United States Constitution and punishes the ownership of Rachel's without

---

1. The Court's December 10, 2002 Order (Doc. 34) provides an exhaustive history of those proceedings and is incorporated into this order by reference.

establishing actual or constructive knowledge of criminal activity.

C. [The City's] laws, Chapter 14, including Sections 14–92 and 14–93, constitute an unconstitutional prior restraint because they do not provide prompt judicial review or an automatic stay in a license revocation or suspension proceeding in violation of the First and Fourteenth Amendments to the United States Constitution.

Koziara seeks declaratory judgment that the City Code, in general, and Sections 14–92 and 14–93, in particular, are unconstitutional, and Koziara further requests a permanent injunction to prohibit enforcement of the City Code.

On September 2, 2003, the City and Koziara filed cross-motions for summary judgment in this matter. Koziara raised the aforementioned arguments, and the City argues that Koziara does not have standing to raise them.

## II. Standard of Review

A federal court cannot infer standing from argumentative averments in the pleadings. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citations omitted). A party who alleges standing bears the burden of clearly alleging facts to demonstrate that she is the proper one to invoke judicial resolution of a dispute. *Id.* If a party fails to make those necessary factual allegations, the party has no standing. *Id.*

For claims properly put before the court, if a party files a motion summary judgment, judgment "shall be entered forthwith if the pleadings ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV.P. 56(c).

## III. Analysis

At issue is the whether Koziara has standing to challenge either or both the City Code, in general, or Sections 14–92 and 14–93, in particular. This raises two sub-issues: specifically, what are the proper characterizations of Koziara's claims, and on the basis of those claims, can she obtain the relief she seeks?

Article III of the U.S. Constitution, in relevant part, provides that the "judicial Power shall extend to all *Cases*, in Law and Equity, arising under this Constitution ...." U.S. CONST. Art. III, § 2 (emphasis added). This language requires that a party's claim present three things before it or the party may stand to invoke a federal court's jurisdiction:

(1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" ...; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court;" ... and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative,"

*Northeastern Fla. Ch. of Assoc. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663–64, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (citations omitted). These requirements, collectively known as "standing," are irreducible constitutional preconditions to federal jurisdiction. *Id.* They are, furthermore, interlinked.

In *City of Los Angeles v. Lyons*, 461 U.S. 95, 97–98, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), a person, whom Los Angeles police officers subdued with a choke-hold, sued the city seeking to enjoin its police from certain use of choke-holds in the future. On the issue of standing, the Court held that a "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury.'" *Id.* at 101–02, 103 S.Ct. 1660. The Court considered past injury insufficient to confer standing to claim injunctive relief. *Id.* at 105, 103 S.Ct. 1660. Because Lyons could not credibly show a realistic threat that the police would again choke him in violation of his constitutional rights, the Court concluded that Lyons did not have standing to seek injunctive relief. *Id.* at 106–07, n. 7, 103 S.Ct. 1660. The redress a party seeks must, therefore, directly remedy a cognizable injury.

In the instant case, Koziara frames her challenges to the City's Code using the terms "prior restraint" and "overbreadth," takes issue with revocation of Rachel's adult entertainment license, argues that her relationship with Rachel's supports her claims, and implicitly asks this Court to take notice of some cognizable injury. In this regard, Koziara points to the First Amendment as relaxing the aforementioned standing requirements to some indefinite degree embodied in the notions of overbreadth third-party standing and, further, related third-party standing.

## A. Overbreadth Third-party Standing.

■ In the First Amendment context, the injury requirement for standing is broadly interpreted for facial challenges to statutes. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Out of concern that laws may curb the exercise of First Amendment rights, courts recognize that litigants, regardless of whether a statute curbs the litigants' own protected expression, have standing to challenge a statute on two bases this Court will collectively refer to as "overbreadth standing."

■ First, in what are essentially general overbreadth claims, a litigant challenges a statute on grounds that its very existence deters or chills the constitutionally-protected expression of other persons, not before the court. *Id.* at 612, 93 S.Ct. 2908. For this fairly abstract claim, the presumed loss of another's protected expression is an injury sufficient to confer standing on an otherwise uninjured party. *See id.*

■ Second, in what are prior-restraint claims, a litigant challenges a statute on grounds that it preconditions protected expression on either: (a) obtaining a license, and the statute does not limit the time within which the decision maker must issue the license; or (b) obtaining prior approval for expression, and the statute sets no time limit for making that decision or delegates to the decision maker excessive discretion to deny approval. *See FW/PBS, Inc.*, 493 U.S. at 223–24, 110 S.Ct. 596 (citations omitted). For these claims, the injury sufficient to confer standing is "that 'every application of the statute create[s] an impermissible risk of suppression of ideas.'" *Id.*

■ A finding of facial overbreadth or prior restraint is made as a last resort to totally forbid enforcement of an offending statute "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908; *see also FW/PBS, Inc.*, 493 U.S. at 223–24, 230, 110 S.Ct. 596. It is this invasive result that counsels sparing

use of such a determination. *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908. Although statutes, to varying degrees, may deter or chill protected expression, at some point, that effect cannot justify finding, and thus invalidating, a statute as facially unconstitutional. *Id.* at 615, 93 S.Ct. 2908. For example, unless a statute's facial overbreadth is real and substantial in light of the statute's legitimate scope, whatever overbreadth may exist should be cured in cases predicated on enforcement of the statute. *Id.* at 616, 93 S.Ct. 2908.

When viewed in this light, the exceptional character of overbreadth standing is put in perspective. Whereas overbreadth, that deters or chills others' expression, satisfies the irreducible constitutional requirement of injury, there is no such injury if a statute's unconstitutionality, if any, should be cured in cases predicated on enforcement. *See Broadrick,* 413 U.S. at 616, 93 S.Ct. 2908. Similarly, whereas prior restraint, that suppresses others' expression, also satisfies the irreducible constitutional requirement of injury, there is no such injury if a statute does not uniformly create an impermissible risk of suppression of ideas. *See FW/PBS, Inc.,* 493 U.S. at 223–24, 110 S.Ct. 596. Overbreadth standing requires the credible assertion of an overbreadth or prior-restraint claim. Put differently, one cannot look to overbreadth standing to support a claim that a statute was applied in an unconstitutional way or a claim that an isolated portion of the statute creates an impermissible risk of suppression of ideas.

Furthermore, when compared with other aspects of standing, the limited nature of the relief overbreadth standing can support is put in perspective. To reiterate, the redress a party seeks must relate to a cognizable injury. *See Lyons,* 461 U.S. at 105, 103 S.Ct. 1660. Only a finding of substantial overbreadth or pervasive prior restraint can justify declaring the statute facially unconstitutional and enjoining its enforcement unless and until its unconstitutionality is rectified. *See Broadrick,* 413 U.S. at 613, 615–16, 93 S.Ct. 2908; *FW/PBS, Inc.,* 493 U.S. at 223–24, 110 S.Ct. 596.

In the instant case, Koziara characterizes her claims as challenging the City Code for overbreadth or prior restraint. With regard to her first two claims, however, that characterization is facially inaccurate. Koziara's first claim, that City Code Sections 14–92 and 14–93 constitute prior restraint (unchecked discretion), focuses on non-pervasive elements of the City Code. Sections 14–92 and 14–93 control suspension and revocation of adult entertainment licenses. They do not present a barrier to licensing in every instance and, therefore, cannot support a claim for prior restraint. *See FW/PBS, Inc.,* 493 U.S. at 223–24, 110 S.Ct. 596. Koziara's second claim, that revocation of Rachel's adult entertainment license constitutes prior restraint, it is a text-book "as applied" constitutional challenge, which does not constitute a facial challenge to avail overbreadth standing. *See Broadrick,* 413 U.S. at 613, 615–16, 93 S.Ct. 2908; *FW/PBS, Inc.,* 493 U.S. at 223–24, 110 S.Ct. 596.

Nevertheless, Koziara's third claim, that the City Code fails to provide prompt judicial determination of the validity of license revocations or suspensions, states part of a claim for prior restraint. That claim focuses on one aspect of an alleged constitutional infirmity—that the City Code does not provide for prompt judicial determination of the validity of licensing decisions. That greater omission is what supports overbreadth standing. *See FW/PBS, Inc.,* 493 U.S. at 223–24, 110 S.Ct. 596. To the extent Koziara attacks

that omission, she has standing. Yet in regard to the City Code, this Court is bound to hold that that omission is not unconstitutional. *See Boss Capital, Inc. v. City of Casselberry*, 187 F.3d 1251, 1256–57 (11th Cir.1999).

## B. Related Third-party Standing

 Koziara also alleges that due to her relationship with Rachel's she should be allowed to assert Rachel's rights. In this regard, Koziara cites *United States Department of Labor v. Triplett*, 494 U.S. 715, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990) and *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248 (5th Cir.1995), and asks this Court to find that the instant case is one in which related third-party standing is appropriate—where a statute prevents a third party from entering into a (typically contractual) relationship with a litigant, a relationship to which the third-party has a legal (typically constitutional) entitlement. *Triplett*, 494 U.S. at 720, 110 S.Ct. 1428.

In standing jurisprudence, related third-party standing can be seen as an offshoot of the irreducible requirement that a litigant have an injury-in-fact. A statute that violates a third party's rights may also cognizably injure a litigant in either or both the pre-enforcement context or in the context of enforcement. *Hang On* and *Triplett* are representative of these instances.

In *Hang On*, the litigant, an erotic dance club, brought a pre-enforcement challenge to an ordinance regulating the behavior of its employees (erotic dancers). *Hang On*, 65 F.3d at 1251. The club alleged that the ordinance was facially unconstitutional as violative of its employees' constitutional rights. *Id.* The court recognized that the ordinance's affect on those rights bore a direct relation to club's and its employee's financial interests. *Id.* at 1252. The court found that impact sufficient to meet the constitutional requirement of injury and to justify allowing the club to assert its employees' rights. *Id.*

In *Triplett*, a disciplinary proceeding (enforcement action) was brought against an attorney for violation of statutes restricting fees, and the attorney raised the defense that the statutes violated his client's rights. *Triplett*, 494 U.S. at 720, 110 S.Ct. 1428. The attorney, as a defendant, unquestionably was a proper party before the Court. As to his standing to assert others' rights, the Court found it sufficient that the very existence of the statutes allegedly deprived the attorney's prospective clients of the capacity to obtain counsel to recover damages. *Id.* at 720, 726, 110 S.Ct. 1428.

 *Triplett* and *Hang On* support third-party standing if (1) a litigant asserts that a statute's very existence [2] interferes with a third party's constitutional rights,

---

**2.** Although *Triplett* mentions *enforcement* of a statute as preventing a litigant from entering into a relationship, it is apparent that the Court meant the *threat of enforcement*. *See Triplett*, 494 U.S. at 720, 110 S.Ct. 1428. For instance, the Court evaluated evidence "as to the effect of [the attorney's fees statutes] on the availability of attorneys" and found that there was "no basis for concluding that that system deprives claimants of property without due process of law." *Id.* at 726, 110 S.Ct. 1428.

*Hang On* involved a First Amendment challenge a statute prohibiting erotic dancers

from touching customers, an activity alleged to be protected expression. *Hang On*, 65 F.3d at 1252–53. *Hang On* also involved a state-law equal rights (gender bias) challenge to the statute's definition of nudity. *Id.* at 1252. In discussing the ordinance's financial impact on the club and its employees, the court apparently understood that the entire ordinance was contingent upon the definition of nudity, *id.*, such that, if it violated the female dancer's rights to equal treatment, the entire ordinance regulating nude dancing would fail.

and (2) in doing so, injures the litigant's cognizable interests. *See Triplett,* 494 U.S. at 720, 110 S.Ct. 1428; *Hang On,* 65 F.3d at 1252. That is not the situation in the instant case.

In claiming related third-party standing, Koziara points to the revocation of Rachel's adult entertainment license on January 31, 2001. In doing so, Koziara apparently claims that her First Amendment right to perform erotic dance was violated by revocation of Rachel's license. Koziara's basic argument, however, is that City Code Sections 14–92 and 14–93 vest the City with constitutionally impermissible discretion either to suspend or revoke adult entertainment licenses. Koziara does not argue that the City cannot penalize criminal activity, and, as discussed above, she does not credibly assert overbreadth or prior restraint claims.[3] Furthermore, neither the record nor Koziara's allegations challenge the factual predicate for revocation of Rachel's license. Koziara's argument, therefore, is that Rachel's license was revoked under an invalid rule of law. That, in substance, is a defense to revocation that Rachel's might assert in regard to its own rights and on its own behalf, i.e., that enforcement of the statutes violates Rachel's own constitutional rights. That is not an injury that supports related third-party standing. *See Triplett,* 494 U.S. at 720, 110 S.Ct. 1428; *Hang On,* 65 F.3d at 1252.

The deficiency about which Koziara complains injured Rachel's, if anyone. As Sections 14–92 and 14–93 were not applied against Koziara and her challenge to those Sections does not state a claim for overbreadth or prior restraint, Koziara cannot be said to have suffered any cognizable injury for standing to challenge those Sections. Regardless of whether Koziara's due process argument has merit, Rachel's has already challenged the revocation of its license. That due process defense was for Rachel's either to raise or to waive.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED** and **ADJUDGED** that Koziara's Motion for Summary Judgment (Doc. 45) is **DENIED**; the City's Motion for Summary Judgment (Doc. 46) is **GRANTED**; and this case is **DISMISSED** for lack of subject-matter jurisdiction. The clerk is instructed to close the file.

---

**3.** Koziara cannot credibly allege that the very existence of Sections 14–92 and 1493 chills protected expression, or that their scope is such that every application of the City Code impermissibly risks the suppression of ideas.

*See Broadrick,* 413 U.S. at 613, 615–16, 93 S.Ct. 2908; *FW/PBS, Inc.,* 493 U.S. at 223–24, 110 S.Ct. 596. The Court has also ruled against her as regards the review of licensing decisions.